UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

⸻

Theodore Leland Harrington,

Plaintiff,

v.

Commissioner of Social Security,

Defendant.

**Decision and Order**

18-CV-979 HBS
(Consent)

⸻

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court

has reviewed the Certified Administrative Record in this case (Dkt. No. 7, pages hereafter cited in

brackets), and familiarity is presumed. This case comes before the Court on cross-motions for

judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10,

15.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the

"Commissioner") that he was not entitled to Disability Insurance Benefits under Title II of the

Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We

must first decide whether HHS applied the correct legal principles in making the determination. We

must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*,

817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district

court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by

substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.* "The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citations omitted).

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous

2

work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past

work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the

physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e).

The ALJ must then determine the individual's ability to return to past relevant work given the RFC.

*Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Plaintiff here challenges the ALJ's determination of an RFC that allows for sedentary work

with conditions, including the condition that plaintiff should not stay in one position for more than

about 30 to 60 minutes at a time. [441.] The ALJ found that plaintiff had the following severe

impairments: inter-vertebral disc displacement of the lumbar and thoracic spines without

myelopathy but with spondylosis, radiculopathy, lumbago, sciatica, neuritis, cervicalgia, and

radiculitis; and obesity. [439.] After reviewing the records of plaintiff's treatment providers, the ALJ

generally gave significant weight to three treating physicians and an additional treatment provider

because they consistently opined that plaintiff could perform sedentary functions; had generally

good strength and could ambulate without an assistive device; and needed to avoid repetitive

motions and staying in one position for about one or two hours at a time. [446.] The ALJ gave little

weight to plaintiff's treatment providers only on two issues: opinions on ultimate disability status;

and recommendations that plaintiff be allowed to change positions as needed, which the ALJ viewed

as contradictory to the assessments noted above and to medical records that did not note any

distress from plaintiff during clinical visits. [446.] The latter characterization of lack of distress is

the focus of plaintiff's motion:

> A thorough review of the record clearly denotes that these contentions are
> nothing more than gross mischaracterizations of the record. Here, the ALJ seems to
> think that because examinations failed to specifically note Plaintiff was in distress,
> that Dr. Bagnall's and Dr. Sterman's opinions are only entitled to "little weight" and
> "partial weight" respectively. (Tr. 441–442). The record clearly indicates that
> Plaintiff was "uncomfortable" and in "moderate discomfort" on countless occasions

throughout treatment with his providers. (*See* Tr. 782-783, 788, 793, 799, 817, 254, 259, 268, 277, 281, 1036). Furthermore, Plaintiff's pain levels were often noted to be 9-10/10. (*See* Tr. 781, 797, 815, 217, 242, 267, 276, 1030, 1022, 1018, 1003, 997, 991, 291, 360, 1186). Therefore, while it was not explicitly noted by examiners that Plaintiff was in "distress," their examination notes clearly indicate that Plaintiff was in absolute noteworthy pain and discomfort. Additionally, as for the remaining portions of the ALJ's reasoning, the ALJ offers no insight or explanation as to how the factors of Plaintiff not using a cane and having extremity strength are substantial enough reasons to justify discounting of the vital opinions of Dr. Sterman. (Tr. 442).

(Dkt. No. 10-1 at 35–36; *see also* Dkt. No. 16 at 2.) The Commissioner counters that plaintiff is advocating for more restrictive work conditions than his own treatment providers suggested:

> Preliminarily, although Plaintiff makes a single reference to the opinions of Drs. Huckler[1] and Capicotto in his argument, he does not elaborate any argument concerning the ALJ's evaluation of these opinions (Doc. 10-1 at 32–39). Instead, Plaintiff's argument focuses exclusively on the ALJ's rejection of Dr. Bagnall's August 2010 opinion that he required permission to change position as needed and Dr. Sterman's post-DLI opinion that he could not stand, sit, or walk for more than 10 minutes without changing positions or lying down (Doc. 10-1 at 35; Tr. 288, 343). Accordingly, Plaintiff has abandoned any argument challenging the ALJ's consideration of Drs. Huckler and Capicotto's opinions in formulating the physical RFC finding. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (holding that issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal).
>
> The ALJ considered and articulated good reasons for assigning little weight to Dr. Bagnall's August 2010 opinion that Plaintiff would require permission to change positions as needed and assigning partial weight to Dr. Sterman's post-DLI opinion that Plaintiff could not stand, sit, or walk more than 10 minutes without changing position (Tr. 441–42). *See* 20 C.F.R. § 404.1527(c). Specifically, the ALJ considered that Dr. Bagnall's opinion as to Plaintiff's need to change positions was inconsistent with Plaintiff's often noted lack of distress on physical exam (Tr. 441). The ALJ added that Plaintiff's pain was fully accommodated by providing him with the ability to change positions after 30 minutes of sitting, standing, or walking (Tr. 441).
>
> In support of her assessment of the weight due Dr. Sterman's opinion, the ALJ explained that Dr. Sterman's August 2011 opinion as to Plaintiff's ability to stand, sit, and walk was generally inconsistent with the objective medical evidence often showing a lack of distress, good extremity strength, and the ability to ambulate without an assistive device (Tr. 442). The ALJ further noted that Dr. Sterman's opinion was inconsistent other medical opinion evidence (Tr. 442). Substantial

---

[1] Reprinted verbatim; the physician's correct name is Cameron Huckell, M.D.

evidence supports the ALJ's rationale for assigning limited weight to the opinions Drs. Bagnall and Sterman provided.

The ALJ considered that Dr. Bagnall's opinion that Plaintiff would require permission to change positions as needed and Dr. Sterman's opinion that Plaintiff could not stand, sit, or walk more than 10 minutes was inconsistent with Plaintiff's physical exam findings (Tr. 441–42). *See* 20 C.F.R. § 404.1527(c)(4) (explaining that more weight will be assigned medical source opinions that are not inconsistent with other evidence of record). As discussed above, Plaintiff had some positive findings on physical exam, but also often showed a lack of distress, good muscle strength, and the ability to ambulate without an assistive device (Tr. 218, 287, 291–92, 313, 331–32, 336–37, 340–42, 371, 382–83, 782–83, 788–89, 793–94, 799–800, 817–18, 822–23, 832, 837, 846–47, 850, 855–56, 994, 1000, 1005–06, 1010–11, 1015, 1020–21, 1023–24, 1031–32, 1036–49). Further, the ALJ reasonably accommodated Plaintiff's pain symptoms by limiting him to standing or walking and sitting at most 30 minutes at a time (Tr. 436), and Plaintiff has not demonstrated that the evidence compelled greater limitations than those included in the RFC finding.

Additionally, the ALJ explained that other medical opinions of record did not support the extreme limitations Dr. Sterman opined (Tr. 442). Although Dr. Sterman limited Plaintiff to sitting, standing, and walking no more than 10 minutes, Plaintiff's treating doctors opined that Plaintiff was far less limited. In April 2010, Dr. Capicotto opined that Plaintiff could return to work but should not be forced to sit or stand longer than 55 minutes continuously (Tr. 279). In June 2010, Dr. Huckell opined that Plaintiff could perform sedentary-to-light duty work but should avoid sitting, standing, or walking more than 2 hours continuously and 8 hours total (Tr. 293). The ALJ reasonably assigned these opinions significant weight because the treating doctors had examined Plaintiff on multiple occasions and their opinions were generally consistent with the record (Tr. 441).

(Dkt. No. 15-1 at 16–18.)

The Commissioner has the better argument here. On June 16, 2010, plaintiff's treatment provider David Joslyn, RPA-C, examined plaintiff nearly two years to the day (6/23/2008) after he suffered a significant work-related accident. Plaintiff did report that he had constant lower back pain that he rated at 10/10. [296.] In the same examination, however, plaintiff performed range of motion tests that showed reduced range of motion but no inability to perform them. [297.] Joslyn recommended that plaintiff "should avoid sitting, standing or walking for more than 2 hours at one time" and that plaintiff "should not lift anything greater than 20 pounds." [298.] The same result

occurred during a follow-up examination on July 8, 2010. [301.] Both examinations uncovered that plaintiff was able "to walk with a normal gait and able to stand on heels and toes showing good balance and coordination. They [sic] do not use any assistive walking device." [301.] A clinical examination on March 18, 2011 at a pain treatment consultant's office led to a note that plaintiff was maintaining activities of daily living and that "he is able to sit, stand, walk for about 20 minutes at a time." [317.] On August 10, 2010, Dr. Bagnall examined plaintiff. Plaintiff did complain of lower back pain, but Dr. Bagnall was able to conduct tests of plaintiff's range of motion that showed limitations but an ability to complete the tests without distress. [328.] Dr. Bagnall permitted plaintiff to return to work with lifting limited to 20 pounds; no repetitive motions or operation of vibrating equipment; no lifting above shoulder level; permission to change position as needed; and sedentary work only. [329.] On May 21, 2010, Dr. Jerry Tracy found that plaintiff had full or nearly full muscle strength in all extremities and was able to perform tests of range of motion. [336.] On August 18, 2010, Dr. Irving Sterman examined plaintiff, conducted tests of range of motion, and found lifting and carrying restrictions slightly more restrictive than the other treatment providers: 10–15 pounds. [354.] On April 1, 2010, Dr. Capicotto examined plaintiff, completed tests for range of motion, and found that plaintiff would be restricted to 25 pounds and "should not be forced to sit or stand for periods of greater than 55 minutes per hour." [284.]

From the above clinical notes and others in the record and that the Commissioner has cited, a pattern emerges. Nearly all of plaintiff's treatment providers agreed that plaintiff retained some lifting and carrying capacity in the range of 10 to 25 pounds. Some consensus existed that plaintiff could maintain one position for at least 20 minutes and possibly up to two hours at a time, with some dissent about plaintiff needing the ability to change positions at will. Resolving factual discrepancies within a certain range of opinions is where the substantial-evidence rule has maximum

7

effect. "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (internal quotation marks and citation omitted); *see also Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("We examine evidence both supporting and detracting from the decision, and we cannot reverse the decision merely because there exists substantial evidence supporting a different outcome.") (citation omitted); *Henderson v. Comm'r*, No. 18-CV-00072, 2019 WL 3237343, at *5 (W.D.N.Y. July 18, 2019) (affirming ALJ resolution of RFC where treating physician records supported exertional limits despite other evidence in the record). Under these circumstances, the Court is obligated to affirm the Commissioner's final determination regardless of how it might have viewed the evidence in the first instance.

## III.   CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 15) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

_\_/s Hugh B. Scott_____
Hon. Hugh B. Scott
United States Magistrate Judge

DATED: February 26, 2020